## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELLIOT DOE, et al., | ) | Civil Action |
|  | ) | No. 1:09-CV-11611-WGY |
|  | ) |  |
| Plaintiffs, | ) |  |
| v. | ) |  |
|  | ) |  |
| NEWBURYPORT PUBLIC SCHOOLS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

### AFFIDAVIT OF KAREN BRANN IN SUPPORT OF
### NEWBURYPORT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Karen Brann, being first duly sworn, state of my own personal knowledge and/or upon information and belief and the best of my recollection:

1.    I am the Director of Special Education of the Newburyport Public Schools.  In that capacity, I am familiar with and have been actively involved in addressing the matter of Elliot Doe's education.

2.    Elliott Doe attended Villa Maria School in Connecticut for the 2008-2009 school year as a result of his parents' unilateral placement there.  Newburyport never agreed to that placement and did not write an Individualized Education Plan (IEP) for that placement.  Rather than take the issue to hearing, Elliott's parents and Newburyport entered into a settlement agreement which provided that Newburyport had met its obligation to provide Elliott with a free appropriate public education (FAPE) even though it was not paying tuition for Villa Maria or writing an IEP for Villa Maria.  Newburyport agreed to reimburse parents for transportation to Villa Maria from Newburyport and from Villa Maria to Newburyport.

3.      At the time of the settlement agreement, it was my understanding that the plaintiffs kept their single family home in Newburyport and that Elliott and his mother returned there every weekend, holidays, and vacations.

4.      When I learned that Elliott's parents had rented out their single family home in or about February or March, 2009, I became concerned about whether Elliott and his parents continued to reside in Newburyport. The Does then provided Newburyport with a copy of the lease to Mr. Doe of a one-bedroom apartment in Newburyport. It was about that time that Elliott's parents first expressed interest in renegotiating the terms of the settlement agreement for another year in an out-of-state placement. In or about March 18, 2009, I learned that Elliott had been accepted to the Eagle Hill School in Greenwich, Connecticut. I opposed the out-of-state placement because of the availability of appropriate in-state programs in close proximity to Newburyport and because the school district would have no obligation to fund or otherwise provide for Elliott's education if he no longer resided in Newburyport.

5.      On or about March 26, 2009, the Superintendent of Schools held a residency hearing.

6.      After the hearing, Mr. Doe leased a two-bedroom apartment in Newburyport. According to the lease provided to me, the lease term was April 10, 2009, through August 31, 2009.

7.      The Superintendent ultimately concluded that Elliott no longer resided in Newburyport.

8.      Because the Superintendent concluded that Elliott no longer resided in Newburyport, we did not write an IEP for Elliott for 2009-2010 school year.

- 2 -

9.      Since the Does and their attorney continued to maintain that Elliott resided in Newburyport and that they intended to pursue the issue at the hearing in order to have Newburyport ordered to pay for Elliott's attending the Eagle Hill School in Greenwich, Connecticut, we held a team meeting on or about May 28, 2009, to develop an IEP for Elliott so that we would have a program to present to the hearing officer at the hearing. The IEP was sent to Elliott's parents on June 1, 2009.

10.     I have at all times been ready, willing, and able to discuss other appropriate in-state programs for Elliott. Although the Team wrote the IEP for the Merrimac Educational Collaborative (MEC), the Team and I were completely open to discussing other Massachusetts programs. Newburyport made it very clear that MEC was only one option and that we would consider other programs. In fact, also under consideration at that May meeting and thereafter were three other private schools, Learning Prep School, Milestones, Inc., and Murphy Dwyer Academy, and two public programs, the North Shore Education Consortium and the Greater Lawrence Educational Collaborative. Newburyport sent referral packets to all these schools. Only Learning Prep School sent an official letter denying placement. I also discussed Learning Skills Academy in Rye, New Hampshire, although we never sent a referral packet there.

11.     Based upon my interactions with Elliott's parents, I do not believe they would have considered, much less accepted any public school program near Newburyport since they had already chosen Eagle Hill School and Elliott had been accepted there. Plaintiffs wanted Newburyport to pay for Elliott to attend school there.

12.     Although there was some indication that the Does would consider placement at Learning Prep School and/or the Landmark School, I also do not believe Elliott's parents would have considered or accepted placement at either school even if he either had accepted Elliott

(which neither did) since they had already chosen Eagle Hill School and Elliott had been accepted there.

13.    Plaintiffs never notified me as to whether they had accepted or rejected the June 1, 2009, IEP. I learned that they had rejected it because the rejection was included in their hearing exhibits. Plaintiffs never contacted me to reconvene the Team and/or otherwise discuss any other programs near Newburyport. Consequently, we left MEC in the IEP.

14.    In preparing for the hearing, plaintiffs' counsel also presented documents and affidavits which they intended to use to support their residency claim.

15.    On June 29, 2009, Newburyport withdrew its motion to dismiss on residency grounds and notified the BSEA and the plaintiffs that it would no longer challenge residency, but accepted the fact that Elliott was still a Newburyport resident.

16.    In withdrawing the motion to dismiss and resolving the residency issue, Newburyport stated on the record that if Elliott's parents rejected the June 1, 2009, IEP and/or contacted me to dispute the MEC placement, Newburyport would be willing to consider alternative appropriate programs within an hour's drive of Elliott's home in Newburyport. The withdrawal is clear that Newburyport was not wed to the MEC placement, and that although Newburyport believed it was appropriate, it states and restates that Newburyport would consider alternative placements and was willing to reconvene Elliott's team for that purpose. It was my hope that we could resolve Elliott's placement without the need for a hearing.

17.    Plaintiffs never contacted me to discuss alternative placements in Massachusetts or to have me reconvene the Team to discuss alternatives.

18.     Despite Newburyport's offer to reconvene the Team to discuss placements other than MEC, plaintiffs insisted that the hearing go forward because they insisted that Elliott should be placed at the Eagle Hill School.

19.     Although Newburyport was unable to demonstrate to the BSEA's satisfaction that MEC was an appropriate placement and would provide Elliott with a free, appropriate public education (FAPE) in the least restrictive environment, plaintiffs were also unable to convince the BSEA that Eagle Hill was appropriate and/or that Elliott required that private school in Connecticut to receive FAPE.

20.     In fact, since Newburyport was at all times willing to consider other programs within an hour's drive of Newburyport, the BSEA's decision ordered a result which was consistent with my position that we locate a placement in a program within an hour's drive of Elliott's home in Newburyport. Moreover, the decision made it clear to the Does that Elliott should not be placed at Eagle Hill School in Connecticut, but should be placed in a less restrictive environment than would be provided by a private school for children with disabilities and that Newburyport should identify a public school placement and resort to a private school placement only if there was no public school placement available.

21.     The BSEA decision was also consistent with Newburyport's position by ordering a Team Meeting to locate an appropriate placement.

22.     A Team meeting was held on August 25 and the Team prepared an IEP for Elliott and placement at the Spofford School in Boxford. At that meeting, we asked plaintiffs for the Newburyport address to which we should send the IEP. Plaintiffs told us they intended to remain in Newburyport and would provide us with an address. They never did either. Since the only address we had for them was in Westport, Connecticut, we sent the IEP there.

23.     Even though plaintiffs claimed they intended to remain in Newburyport, I
believed it was very clear that parents would be sending Elliott to the Eagle Hill School, and that
the Does no longer resided in or intended to reside in Newburyport. Consequently, I retained an
investigation company the next day to see if they could locate the Does in Newburyport or
Connecticut. The company reported to me almost daily. Its reports and the final report are kept
by me in the ordinary course of the school district's business.

24.     The investigators reported that on Wednesday, August 26, an investigator spoke
with a man believed to be the Does' landlord at the Connecticut address. He told the investigator
that plaintiffs lived there, but were not home at the time. That same day, a different investigator
reported that he did not see plaintiffs or their vehicles at the address of the Newburyport
apartment where the Does' lease was scheduled to expire on August 31. They did not see
plaintiffs or their vehicles there on Thursday, August 27, Saturday, August 29, Monday, August
31, Tuesday, September 1, Friday, September 4, Saturday, September 5, Sunday, September 6, or
Monday, September 7. Neither plaintiffs, nor their vehicles were observed in Newburyport on
Friday, September 11, Saturday, September 12, Sunday, September 13, Monday, September 14,
or Tuesday, September 15.

25.     According to the investigation report, an unidentified female who answered the
door at the house in Newburyport that plaintiffs rent out stated on September 3 that the plaintiffs
did not live in Massachusetts any more, but are living in Connecticut. An investigator in
Connecticut observed the plaintiffs and their vehicles in Connecticut on that same day. The
investigator also observed Mr. Doe's vehicle at plaintiffs' Connecticut address on Tuesday,
September 8 and Wednesday, September 9. On Monday, September 14, and Wednesday,

September 16, the investigator saw Mrs. Doe's vehicle in Connecticut. The investigator saw both vehicles there on Saturday, September 19 and Sunday, September 20, 2009.

26.    I cancelled the surveillance assignment on September 21, after learning about the letters from the Doe's attorney which informed Newburyport's counsel and the Bureau of Special Education Appeals hearing officer that the Does were living in Connecticut and no longer had a residence in Newburyport to return to on weekends or holidays.

27.    Based upon the Doe's failure to provide me with an address in Newburyport at the Team meeting in late August and upon the surveillance reports, I believe the Does have not resided in Newburyport since *at least* August 25, 2009.

28.    The Does never visited Spofford School and never sent their expert to observe the program and comment upon it.

29.    The Does have rejected the IEP with the Spofford School placement.

Signed under the pains and penalties of perjury this _21_ day of October, 2009.

Karen Brann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this _21st_ day of October, 2009, I served a copy of the foregoing on counsel of record for the plaintiffs, Michael J. Tuteur and James A. Manzi, Jr., Foley & Lardner, LLP, 111 Huntington Avenue, Boston, MA 02199, by first class mail, postage prepaid. by ECF and

/s/ Doris R. MacKenzie Ehrens
Doris R. MacKenzie Ehrens